**In re Leon B. PERLIS, Debtor.**

**Virginia R. Perlis, Movant,**

v.

**Leon B. Perlis, Respondent.**

**No. 11–75215–MGD.**

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

Jan. 10, 2012.

---

George M. Geeslin, Atlanta, GA, for Debtors.

## *ORDER DENYING MOTION TO DISMISS OR CONVERT*

MARY GRACE DIEHL, Bankruptcy Judge.

In this case the Court considers whether a chapter 11 Debtor's obligation under a divorce decree to maintain a life insurance policy is a domestic support obligation that first becomes payable post-petition, when the requisite life insurance policy lapsed pre-petition. The case came before the Court on Virginia R. Perlis's ("Movant") Motion to Dismiss or Convert Case Pursuant to 11 U.S.C. § 1112 ("Motion"). (Docket No. 29). Debtor filed his chapter

11 case on September 1, 2011, and Movant filed her Motion on November 4, 2011. Movant asserts that Debtor's case is subject to conversion or dismissal under 11 U.S.C. § 1112(b)(4)(P). That section provides there is cause to convert or dismiss a case if a debtor fails "to pay any domestic support obligation that first becomes payable after the date of the filing of the petition." 11 U.S.C. § 1112(b)(4)(P).

A divorce decree obligated Debtor to make monthly child support payments to Movant. Debtor is current on these payments. In addition, the divorce decree required Debtor to maintain a life insurance policy for $1,000,000.00 to protect against Debtor deceasing before the child support payments were completed. That insurance policy lapsed pre-petition when Debtor failed to pay monthly premiums, and Debtor's failure was addressed by the state court in a divorce decree compliance hearing. Movant argues that Debtor's failure to maintain the insurance policy is cause under § 1112(b) to convert or dismiss Debtor's case.

## FACTUAL HISTORY

Debtor and Movant were married until November 2008, when a Final Judgment and Decree of Divorce ("divorce decree") was entered in the Fulton County Superior Court ("state court"). The divorce decree incorporated a Settlement Agreement ("settlement agreement"). Movant Exh. 2. In addition to dividing property, the settlement agreement required Debtor to make monthly child support payments to Movant. The settlement agreement further required Debtor to maintain a life insurance policy (already owned by Debtor at that time) for $1,000,000.00:

It is acknowledged and agreed that Husband is the owner of an unencumbered life insurance policy on his life with death benefits of ONE MILLION DOLLARS ($1,000,000)....

Additionally, it is acknowledged that Husband's child support obligations as provided in this Agreement shall continue after his death and be binding upon his estate. In order to provide and assure that there will be sufficient funds in Husband's estate upon his death to satisfy the above obligations under this Agreement and any Judgment into which this Agreement may be incorporated, Husband shall maintain the aforementioned policy and designate each child as a beneficiary for a death benefit of TWO HUNDRED FIFTY THOUSAND DOLLARS ($250,000) to be held in Trust by Wife.

Husband shall be solely responsible for and shall cause to be timely paid on said life insurance policy all dues, premiums and assessments as the same shall become due. Husband agrees that within ten (10) days of execution of this Agreement, and by May 1st of each year thereafter, he shall provide Wife with written certification that all premiums are and have been paid and that the insurance afforded hereunder is in full force and effect and that the beneficiary designations are correct. Movant Exh. 3, ¶ 27.

Movant was also to be designated as a beneficiary, but for a death benefit of $240,000.00. *Id.* The purpose of the life insurance policy was to insure that Debtor's equitable division and child support payments would be made even if Debtor deceased completion of the payments. *Id.*

In October 2010, the state court entered a consent order modifying the divorce decree. Movant Exh. 3. The consent order (1) required Debtor to provide written verification of the insurance policy to Movant and (2) provided for a compliance hearing in February 2011. The compliance hear-

ing revealed that Debtor's life insurance policy had lapsed because Debtor failed to pay the premiums. Debtor's Reply ¶ 12. Debtor had also defaulted on other obligations in the divorce decree. Movant Exh. 4. Consequently, an order on the compliance hearing ("compliance order") held that Debtor was in willful contempt of the divorce decree, in part because of his failure to maintain complying life insurance. Movant Exh. No. 6.

To purge himself of contempt with respect to the life insurance, the compliance order required Debtor to "exercise his best efforts to secure conforming life insurance coverage" and to verify his efforts and acts to Movant. *Id.* A final order was issued on the compliance hearing in March 2011 ("final order"). Debtor's Exh. I. The final order provides that the requisite sums have been paid to Movant and that the "instant contempt is dismissed." *Id.* No mention is made of Debtor's obligation to pursue a life insurance policy in accordance with the compliance order. *Id.*

Sometime after the final order was issued, Debtor was incarcerated for again defaulting on obligations (unrelated to the life insurance) under the divorce decree. Debtor filed the present chapter 11 case on September 1, 2011. Movant's Motion came on for hearing on December 12, 2011. Debtor asserted that he was current on all child support obligations. The only issue before the Court is whether Debtor's failure to maintain life insurance under the divorce decree constitutes cause to dismiss or convert Debtor's case under 11 U.S.C. § 1112(b)(4)(P).

## DISCUSSION OF LAW

Section 1112(b)(1) of the Bankruptcy Code provides that the court shall convert or dismiss a case if the movant establishes cause. An exception to this rule arises when the court specifically identifies the presence of unusual circumstances that establish conversion or dismissal is not in the best interest of creditors and the estate, and the debtor or a party in interest objects and meets the requirements of § 1112(b)(2). Section 1112(b)(4)(P) defines "cause" to include the "failure of the debtor to pay any domestic support obligation that first becomes payable after the date of the filing of the petition." 11 U.S.C. § 1112(b)(4)(P).

■ In order for Debtor's failure to maintain the life insurance policy to constitute cause for dismissal or conversion, Movant must show (1) that the obligation to maintain the life insurance policy is a "domestic support obligation" under 1112(b)(4)(P), and (2) that it is an "obligation that first becomes payable after the filing of the petition."

1. *The obligation to maintain life insurance a domestic support obligation.*

Regarding the first issue, the statutory language defining "domestic support obligation" is in 11 U.S.C. § 101(14A):

"a debt that accrues before, on, or after the date of the order for relief in a case under this title, including interest that accrues on that debt as provided under applicable nonbankruptcy law notwithstanding any other provision of this title, that is—

(A) owed to or recoverable by—

(i) a spouse, former spouse, or child of the debtor . . .

(B) in the nature of alimony, maintenance, or support (including assistance provided by a governmental unit) of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;

(C) established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of—

(i) a separation agreement, divorce decree, or property settlement agreement;

(ii) an order of a court of record; or

(iii) a determination made in accordance with applicable nonbankruptcy law by a governmental unit; and . . . .

Courts have interpreted 11 U.S.C. § 101(14A) broadly, finding that it includes more than just the traditional debts stemming from alimony or child support. *See, e.g., In re Baer,* 2009 WL 3296140 (Bankr. E.D.La.2009) (determining a debt related to a prenuptial contract to be a domestic support obligation for purposes of the automatic stay). A broad interpretation is warranted by the strong congressional policy favoring the enforcement of obligations for spousal and child support. *See, e.g., Shaver v. Shaver,* 736 F.2d 1314, 1315–16 (9th Cir.1984). This policy is evidenced by § 523(a)(5) (excepting domestic support obligations from discharge) and numerous amendments to the Bankruptcy Code. *Cavalli v. Cavalli (In re Cavalli),* 2009 WL 3125549, *2 (Bankr.N.D.Ga.2009). However, no other court has held that the obligation to maintain a life insurance policy in these circumstances is a domestic support obligation under § 101(14A).

But other bankruptcy courts have addressed whether the obligation to maintain a life insurance policy for the benefit of children pursuant to a divorce decree is a nondischargeable debt for purposes of 11 U.S.C. 523(a)(5). Indeed, several courts have held that the obligation to maintain a life insurance policy under a divorce decree is domestic support obligation and thus a nondischargeable debt. *Powell v. Shealey (In re Shealey),* 2006 WL 6592071 (Bankr.N.D.Ga.2006); *Klayman v. Klayman (In re Klayman),* 234 B.R. 151 (Bankr.M.D.Fla.1999) (decided before BAPCPA). Domestic support obligations under BAPCPA are broader than the scope of former § 523(a)(5). The purpose of maintaining life insurance is to provide for child support payments. The Court therefore holds that the obligation is a domestic support obligation. To obtain the relief sought under § 1112(b)(4)(P), however, Movant must still show that this obligation first becomes payable after the date the petition was filed.

2. *The obligation to maintain life insurance does not first becomes payable after the petition-date.*

The obligation to maintain the life insurance policy does not first become payable after the petition-date. The language "first becomes payable after the date of the filing of the petition" is generally thought to include any domestic support obligation that first *matures* post-petition. Collier on Bankruptcy ¶ 1112.04(6)(P) (Alan N. Resnick & Henry J. Sommer eds., 16th ed.). Here, Movant notes that if Debtor failed to make a post-petition child support payment, cause would undoubtedly exist under § 1112(b)(P)(4) to convert or dismiss Debtor's case. And Movant argues that the obligation to maintain a life insurance policy is similar to making monthly child support payments, as maintaining life insurance requires the recurring payment of monthly premiums. Because Debtor did not pay a monthly premium on a complying life insurance policy after the petition was filed, Movant contends that cause exists for conversion or dismissal. Debtor, on the other hand, argues that the obligation to maintain a life insurance policy first became due before the petition-date and is not owed post-petition.

The Court is unconvinced that § 1112(b)(4)(P) was meant to include the

particular situation now before the Court, for two reasons. First, no payments are currently due under the life insurance policy designated in the divorce decree. Second, there are no other life insurance obligations which are currently payable.

As to the first reason, the divorce decree obligates Debtor to maintain a specific life insurance policy that was already in force when the divorce decree was entered. That policy lapsed. Consequently, no payments are currently due on that policy. To obtain complying life insurance, Debtor must obtain a new policy. But the divorce decree does not provide for the event of a policy lapse. Thus, Debtor is not explicitly required to obtain a different or new policy if the one described in the divorce decree lapses. The divorce decree only requires Debtor to maintain the policy designated under it. Thus, no premiums are currently payable under the life insurance policy designated in the divorce decree.

As to the second reason, the use of the word "payable" suggests that Congress intended § 1112(b)(4)(P) to apply to *payments* of money, whether for child support, alimony, etc. Although premium payments might fit this definition, a general obligation to obtain a life insurance policy does not. At present, there are no payments Debtor is obligated to make under the original life insurance policy or a new life insurance policy. Nor has Movant shown that there are any monetary payments whatsoever that Debtor is required to make in relation to life insurance that mature post-petition. Debtor could have satisfied the life insurance obligation pre-petition by paying for life insurance in a single lump-sum payment. Rather, Debtor and Movant reached a settlement agreement obligating Debtor to maintain a specific life insurance policy that was already in force. No monthly premiums are due and payable post-petition on that life insurance policy, as it lapsed pre-petition.

Movant argues that Debtor's life insurance obligation under the divorce decree is ongoing, and that Movant could once again move in state court to hold Debtor in contempt. Thus, Movant is essentially asking the Court to dismiss Debtor's case because Debtor has not replaced the lapsed policy; but replacing the life insurance policy is not an obligation that is *payable.* Moreover, it is an obligation that should be addressed by the state court. Movant has already sought relief in state court for Debtor's failure to maintain a complying life insurance policy. Debtor was found in contempt, and the compliance order required Debtor to exercise his best efforts to secure conforming life insurance coverage. The compliance order did not require Debtor to make payments on a policy. Indeed, none was in place. Debtor's contempt was ultimately dismissed in the final order, which did not explicitly state whether Debtor satisfied the obligation to use his best efforts to secure conforming life insurance. Regardless, the state court dismissed the contempt, thereby resolving the issues raised in the compliance order.

Movant may go back to state court and obtain an order holding Debtor in contempt and requiring him to obtain a new life insurance policy. A premium for that policy would then become due at some point. But that is not the situation here. Under the current posture of litigation in the state court, no life insurance policy is in force or required to be in force. Rather, Debtor was found to be in contempt, was required to use his best efforts to obtain complying life insurance, and the contempt was then dismissed. Thus, there are no other obligations related to obtaining a new life insurance policy that are currently payable.

Because the life insurance policy designated in the divorce decree is not currently

in force, and because there is no state court order requiring Debtor to obtain a new policy post-petition, the Court finds that there are no obligations related to a life insurance policy that are payable post-petition.

### 3. *Conclusion*

In sum, Congressional policy favors the enforcement of family support obligations under divorce decrees. But the plain language of 11 U.S.C. § 1112(b)(4)(P) does not entitle Movant to conversion or dismissal of Debtor's case. No life insurance policy is presently in force with payments coming due—that is, payable—post-petition. And the obligation to obtain life insurance—which under the state court litigation is not required of Debtor at present—is not an obligation that is payable. While Movant is not entitled to relief under § 1112(b), Movant may have remedies in various other Bankruptcy Code sections designed to protect parties owed domestic support obligations. Accordingly, it is

**ORDERED** that Movant's Motion to Dismiss or Convert Case is **DENIED.**